Keith H. Rutman (SBN # 144175)
501 W Broadway Ste 1650
San Diego, CA 92101
telephone: (619) 237-9072
fax: (760) 454-4372
krutman@krutmanlaw.com

Attorney for Plaintiffs
STEVEN DALTON & TINA PIZZO

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

(Hon. Thomas J. Whelan)

| | |
|---|---|
| STEVEN DALTON & TINA PIZZO,<br>*Plaintiffs,*<br><br>v.<br><br>COUNTY OF SAN DIEGO, DOES 1-5,<br>*Defendants.* | No. 21-cv-2143-W (WVG)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PER F.R.Civ.P. 12(b)(6)**<br><br>NO ORAL ARGUMENT UNLESS OTHERWISE REQUESTED BY COURT<br>Courtroom: 3C |

1
2

**Plaintiffs' Opposition to Defendants' Motion to Dismiss for Failure to State a Claim**

3

4        COME NOW Plaintiffs, by and through their attorney KEITH H. RUTMAN,

5    and hereby file their Opposition to Defendants' Motion to Dismiss pursuant to Fed. R.

6    Civ. P., rule 12(b)(6).

7        Said Opposition is based on the grounds that the Complaint alleges sufficient

8    facts to support the particular claims being challenged in the motion. If not. leave to

9    amend should be granted.

10        Said Opposition is based on the instant Opposition, Memorandum of Points and

11   Authorities, the records and files in the instant case, and any and all other matters

12   which may be presented to the Court prior to or at the time of the hearing of said

13   Motion.

14

15                                        Respectfully submitted,

16

17   Dated: December 12, 2017          By:   s/ Keith H. Rutman

18                                            KEITH H. RUTMAN

19                                            Attorney for Plaintiff

20                                            PAMELA FOX KUHLKEN

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

POINTS AND AUTHORITIES ......................................................... 1

   I.   Introduction................................................................................ 1

   II.  Statement of Facts...................................................................... 1

   III.  The Applicable Rule 12(b)(6) Standards .................................. 4

   IV.  Plaintiffs Have Plead Sufficient Factual Support for Their Unlawful Detention and Arrest Based Claims................................................. 5

     A.  There Was No Reasonable Suspicion To Detain Mr. DALTON .................. 5

     B.  Ms. PIZZO Was Unlawfully Detained ............................................. 7

     C.  There Was No Probable Cause To Believe Plaintiff DALTON Had Committed Any Crime. ................................................................. 8

       1.  § 148 Requires a Showing that the Deputies Were Acting Lawfully.......... 9

       2.  There was no Probable Cause to Arrest for Child Endangerment ............ 10

   V.  The Facts Alleged in the Complaint Support Ms. PIZZO's Claim Under the "State Created Danger Doctrine."................................................. 11

     A.  Ms. PIZZO Has Alleged Facts to Show That the Danger was Obvious ...... 15

     B.  Ms. PIZZO Has Alleged Facts to Show That DOE 1 Acted with Deliberate Indifference................................................................. 15

     C.  Ms. PIZZO Need Not Allege facts to show that she sustained serious injuries after Mr. DALTON's arrest ................................................ 17

   VI.  Plaintiffs Have Pled Sufficient Facts Supporting a Bane Act Cause of Action ................................................................................. 17

   VII.  Plaintiffs Can Bring Claims Directly Against the County Under a Theory of Respondeat Superior Pursuant to Government Code §815.2 ................................................................................. 19

   VIII.  It Is Premature To Dismiss Any Claims Against DOES 2-5 ................ 19

   IX.  Leave to Amend Ought to be Granted ........................................... 19

   Conclusion ................................................................................ 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases:**

.................................................................................................... 11

*Allison v. California Adult Auth.*
    419 F.2d 822 (9th Cir. 1969) ......................................................... 5

*Allison v. Cnty. of Ventura*
    68 Cal.App.3d 689 (1977) ............................................................ 19

*Alma W. v. Oakland Unified Sch. Dist.*
    123 Cal.App.3d 133 (1981) .......................................................... 19

*Atwater v. City of Lago Vista*
    532 U.S. 318 (2001) ...................................................................... 8

*Barker v. Riverside Cnty. Office of Ed.*
    584 F.3d 821 (9th Cir. 2009) ......................................................... 4

*Brendlin v. California*
    551 U.S. 249 (2007) ....................................................................... 8

*Broam v. Bogan*
    320 F.3d 1023 (9th Cir. 2003) ....................................................... 9

*Caballero v. City of Concord*
    956 F.2d 204 (9th Cir. 1992) ......................................................... 4

*Cabrera v. City of Huntington Park*
    159 F.3d 374 (9th Cir. 1998) ......................................................... 8

*Cahill v. Liberty Mut. Ins. Co.*
    80 F.3d 336 (9th Cir. 1996) ........................................................... 4

*California v. Hodari D..*
    499 U.S. 621 (1991) ....................................................................... 8

*Conley v. Gibson*
    355 U.S. 41 (1957) ......................................................................... 4

*Cornell v. City & Cnty. of San Francisco*
    17 Cal.App. 5 (2018) ................................................................... 18

*DeShaney v. Winnebago Cty., Dep't of Soc. Servs.*
    489 U.S. 189 (1989) ............................................................... 11, 12

*Edgerly v. City & Cnty. of San Francisco*
  599 F.3d 946 (9th Cir. 2010) ........................................................................... 9

*Ewing v. City of Stockton*
  588 F.3d 1218 (9th Cir. 2009) ......................................................................... 6

*Florida v. Bostick*
  501 U.S. 429 (1991) ........................................................................................ 7

*Florida v. Royer*
  460 U.S. 491 (1983) ........................................................................................ 7

*Friedman v. City of Los Angeles*
  52 Cal.App.3d 317 (1975) ............................................................................. 19

*Graham v. O'Connor*
  490 U.S. 386 (1989) ........................................................................................ 5

*Hart v. Parks*
  450 F.3d 1059 (9th Cir. 2006) ......................................................................... 9

*Heien v. North Carolina*
  574 U.S. 54 (2014) .......................................................................................... 7

Henry A. v. Willden
  678 F.3d 991 (9th Cir. 2012) ......................................................................... 17

*Hernandez v. City of San Jose*
  897 F.3d 1125 (9th Cir. 2018) ....................................................................... 12

*In re Muhammed C.*
  95 Cal.App.4th 1325 (2002) .......................................................................... 10

*Johnson v. State of Calif.*
  207 F.3d 650 (9th Cir. 2000) ........................................................................... 4

*Kennedy v. City of Ridgefield*
  411 F.3d 1134 (9th Cir. 2005) ................................................................. 13, 14

*Kennedy v. City of Ridgefield*
  439 F.3d 1055 (9th Cir. 2006) ................................................................. passim

*L.W. v. Grubbs (Grubbs I)*
  974 F.2d 119 (9th Cir. 1992) ......................................................................... 11

*Lawrence v. United States*
  340 F.3d 952 (9th Cir. 2003) ......................................................................... 12

*Mackinney v. Nielsen*
  69 F.3d 1002 (9th Cir. 1995) ......................................................................... 10

*McDowell v. Rogers*
  863 F.2d 1302 (6th Cir. 1988) ................................................ 17

*Meredith v. Erath*
  342 F.3d 1057 (9th Cir. 2003) ................................................ 17

*Milanese v. Rust- Oleum Corp.*
  244 F.3d 104 (2nd Cir. 2001) ................................................ 20

*Miller v. Rykoff-Sexton, Inc.*
  845 F.2d 209 (9th Cir. 1988) ................................................ 20

*Mir v. Fosburg*
  646 F.2d 342 (9th Cir. 1980) ................................................ 20

*Munger v. City of Glasgow Police Dep't*
  227 F.3d 1082 (9th Cir. 2000) ............................................ 12, 16

*Nehad v. Browder*
  929 F.3d 1125 (9th Cir. 2019) ................................................ 18

*Park v. Shiflett*
  250 F.3d 843 (4th Cir. 2001) ................................................. 8

*Pashuta v. City of San Diego*
  2020 U.S.Dist.LEXIS 57218 (S.D. Cal. 2020) ................................ 18

*Patel v. Kent Sch. Dist.*
  648 F.3d 965 (9th Cir. 2011) ............................................. 12, 15

*Peloza v. Capistrano Unified Sch. Dist.*
  37 F.3d 517 (9th Cir. 1994) .................................................. 4

*Penilla v. City of Huntington Park*
  115 F.3d 707 (9th Cir. 1997) ................................................ 15

*People v. Bower*
  24 Cal.3d 638 (1979) ........................................................ 10

*People v. Checketts*
  71 Cal.App.4th 1190 (1999) .................................................. 11

*People v. Quiroga*
  16 Cal.App.4th 961 (1993) ................................................... 10

*People v. Valdez*
  27 Cal.4th 778 (2002) ....................................................... 11

*People v. Wetzel*
  11 Cal.3d 104 (1974) ........................................................ 10

*Ramos v. Cnty. of Madera*
   4 Cal.3d 685 (1971)   ........................................................................ 19

*Reese v. City of Sacramento*
   888 F.3d 1030 (9th Cir. 2018)   ...................................................... 18

*Robinson v. Solano Cnty.*
   278 F.3d 1007 (9th Cir. 2002)   ...................................................... 17

*Ruppe v. City of Los Angeles*
   186 Cal. 400 (1921)   ........................................................................ 19

*Saes Getters S.p.A. v. Aeronex, Inc.*
   219 F.Supp.2d 1081 (SDCA 2002)   ............................................... 19

*Saul v. U.S.*
   928 F.2d 829 (9th Cir. 1991)   ........................................................ 20

*Scott v. Harris*
   550 U.S. 372 (2007)   .......................................................................... 5

*Shoyoye v. Cnty. of Los Angeles*
   203 Cal.App.4th 947 (2012)   .......................................................... 17

*Sisseton-Wahpeton Sioux Tribe v. U.S.*
   90 F.3d 351 (9th Cir. 1996)   .......................................................... 20

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011)   ........................................................ 4

*Tekle v. United States*
   511 F.3d 839 (9th Cir. 2007)   ........................................................ 17

*Terry v. Ohio*
   392 U.S. 1 (1968)   .............................................................................. 5

*U.S. v. Prescott*
   581 F.2d 1343 (9th Cir. 1978)   ...................................................... 10

*U.S. v. Ramirez*
   473 F.3d 1026 (9th Cir. 2007)   ........................................................ 9

*U.S. v. Sharpe*
   470 U.S. 675 (1985)   .......................................................................... 9

*United States v. Banks*
   539 F.2d 14 (9th Cir. 1976)   ............................................................ 6

*United States v. Blount*
   123 F.3d 831 (5th Cir. 1997)   .......................................................... 6

*United States v. Brown*
    996 F.3d 998 (9th Cir. 2021) ................................................................ 5, 8

*United States v. Manzo-Jurado*
    457 F.3d 928 (9th Cir. 2006) ................................................................ 6

*United States v. Montero-Camargo*
    208 F.3d 1122 (9th Cir. 1999) .............................................................. 6

United States v. Smith
    633 F.3d 889 (9th Cir. 2011) ................................................................ 8

*United States v. Tiong*
    224 F.3d 1136 (9th Cir. 2000) .............................................................. 6

*United States v. Woods*
    720 F.2d 1022 (9th Cir. 1983) .............................................................. 7

*Wagon v. Rocklin Unified Sch. Dist.*
    2019 U.S.Dist.LEXIS 105387 (E.D.CA. 2019) ................................... 18

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*
    648 F.3d 452 (6th Cir. 2011) ................................................................ 4

*Wood v. Ostrander*
    879 F.2d 583 (9th Cir. 1989) ................................................................ 12, 15

*Wood v. Strickland*
    420 U.S. 308 (1985) ............................................................................. 4

*Zelig v. Cnty. of Los Angeles*
    27 Cal.4th 1112 (2002) ........................................................................ 19

**Statutes:**

42 U.S.C. § 1983 ..................................................................................... 4

Cal. Civ. Code § 52.1 .............................................................................. 17

Cal. Civ. Code § 52.1 .............................................................................. 18

Cal. Gov't Code § 815.2 .......................................................................... 19

Cal. Penal Code § 273a .......................................................................... 10

**Constitutions:**

U.S. Const., 4th Amend. ......................................................................... 8

**Court Rules:**

Fed. R. Civ. P., rule 12   ........................................................................ 2, 4, 19

Fed. R. Civ. P., rule 15   ........................................................................... 19

**Other:**

2 Wayne R. LaFave, Search and Seizure § 3.4(a) (4th ed. 2004)   ............................... 6

**Points and Authorities**

## I. Introduction

These days, it's tough to be the parents of a teenager. It's even tougher if your daughter/stepdaughter is severely disabled, causing you and your family to endure a long history of police interventions, juvenile court proceedings, and psychiatric interventions.

It's even tougher than that when the police treat you as a perpetrator of violence (or the enemy) simply because one unknown Deputy Sheriff is too lazy to bother to investigate the well-documented history at the home he was dispatched to.

As a result, on April 10, 2121, Plaintiff DALTON was arrested for obstructing an officer and felony child abuse, costing him $10,000 in a bail premium to secure his release from a case that was never even filed. Compounding the matter, this officer, after detaining Ms. PIZZO and threatening to take her into custody, left Ms. PIZZO and the other minor children at risk from a violent, mentally disturbed teenager because their sole protector was hauled off to jail, resulting in her assault..

As a result, they filed an action alleging multiple theories of liability under federal and state law. Defendants have moved to dismiss the entirety of the Complaint, asserting that none of the facts at issue allege any prima facie case of liability on any theory. They are flat-out wrong and the motion should be denied.

## II. Statement of Facts

According to the verbatim allegations of the Complaint, which are all that matters:

> 9 Octavia Dalton is Claimant's then-16 year daughter and TINA PIZZO's stepdaughter. She is severely disabled, and there is a long history of police responses, juvenile court proceedings and psychiatric interventions, as detailed in an official report of Stephanie Lord. PhD dated 4/19/21. Dr. Lord's evaluation was 2 days before the events at issue here.

10 More than once, Octavia has threatened her father, Ms. PIZZO, and her siblings with violence, including assaults with knives.

11 On April 10, 2121, when Ms. PIZZO came home from work, Octavia requested to play on her tablet. House rules states that tablet time must be earned throughout the day before usage in the evening will be permitted. Upon learning that Octavia had not earned her tablet time, Ms. PIZZO told Octavia she was not able to use her tablet. In response, Octavia picked up a knife and threatened to murder Ms. PIZZO.

12 Mr. DALTON was in the bathroom and heard the threat. He immediately rushed to the kitchen, where Ms. PIZZO has already gotten the knife away from Octavia. Nevertheless, Octavia had Ms. PIZZO trapped in a corner pushing and smacking her. Mr. DALTON put Octavia in a bear-hug type hold and started taking her over to the front door so she could go for a walk.

13 In response, Octavia dropped to the ground in front of the front door and grabbed the electrical cord attached to a fan and put it around her neck. Utilizing their 24/7 crisis support app on an iPhone, Mr. DALTON and Ms. PIZZO called for PERT support, as they have done many times in the past. Octavia took off, yelling that she was going to run away and kill herself.

14 An unknown Deputy Sheriff arrived, and Mr. DALTON and Ms. PIZZO explained what happened. 2 reports were made; one for the crisis and another for a runaway. Deputies undertook a search, but after about an hour they called to say they had not found her. Ms. PIZZO therefore undertook her own search and found Octavia within minutes.

15 She then called the Sheriff's Department to advise that Octavia has been located and is at the home. Another unknown Deputy (DOE 1) was dispatched. Ms. PIZZO went inside to let Mr. DALTON know what was going on and to check on the other kids. During this time, Octavia was outside talking to Deputy DOE 1. Deputy DOE 1 then spoke to Ms. PIZZO and inquired about the incident. Ms. PIZZO told him that Octavia had her in a corner pushing and hitting her when Mr. DALTON bear-hugged her to get her off. Deputy DOE 1 then asked to talk to Mr. DALTON, who came outside to comply with the request.

16 Mr. DALTON asked Deputy DOE 1 if he had ever been to the residence before. When Deputy DOE 1 said no, Mr. DALTON requested that he call somebody who has and then he (Mr. DALTON) would come

back out to talk. As Mr. DALTON turned to go back inside, Deputy DOE 1 grabbed him by the arm and put him in handcuffs, thereby arresting him without probable cause. At this point in time, Ms. PIZZO began recording the attached video. Before he left with Mr. DALTON in custody, Deputy DOE 1 stated that if he has to come back out "someone else is going to jail." He departed, leaving Octavia behind and taking away the one person (Mr. DALTON) who could protect Ms. PIZZO and the other three minor children (then ages 9, 11 and 14) from Octavia.

17 Sure enough, as soon as he left, Octavia started digging her nails into Ms. PIZZO's arm and then went outside, grabbed a stick, and began hitting things, including Ms. PIZZO. Ms. PIZZO activated the crisis alert device and Deputy DOE 1 was dispatched. Just as he arrived, Mr. DALTON called from the jail. Ms. PIZZO answered the telephone, but this aggravated Deputy DOE 1, who, apparently feeling ignored, began to remove his handcuffs from his belt. Ms. PIZZO reasonably felt she was being detained at this point due to the show of force (i.e., handcuffs being retrieved).

18 As the handcuffs were coming out, Brooke (Mr. DALTON's then-14 year old daughter) showed Deputy DOE 1 a video of Octavia's behavior, at which point Deputy DOE 1 turned from Ms. PIZZO, walked over to Octavia and had his partner (DOE 2)take Octavia to his patrol vehicle. Deputy DOE 1 informed Ms. PIZZO they were taking Octavia to the hospital.

19 Due to the false charges on which he was booked (child cruelty and resisting arrest), Mr. DALTON's bond was set at $100,000. A bail bondsman was retrained. He charged the sum of $10,000, on credit terms, and Mr. DALTON was released. Because no criminal charges were filed by the District Attorney, Mr. DALTON received a "detention only" certificate in the mail.

20 Their detention was caused without any reasonable suspicion to do so. Mr. DALTON was arrested without any probable cause to believe he was subject to arrest. No reasonable officer in the possession of the information known to Defendants would have believed that either was subject to arrest or detention.

21 As to Ms. PIZZO, Deputy DOE 1 placed her in peril, in deliberate indifference to her safety.

1
2

### III.   The Applicable Rule 12(b)(6) Standards

3
4
5
6
7
8

In a § 1983 case, a plaintiff must establish by a preponderance of the evidence that a defendant: (1) performed an act or acts which operated to deprive her of one or more of her Federal Constitutional rights; (2) acted under color of law; and (3) was the legal cause of damages. *Wood v. Strickland*, 420 U.S. 308 (1985). Proof of specific intent to deprive someone of their constitutional rights is not required. *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992).

9
10
11
12
13

A rule 12(b)(6) motion is similar to the common law general demurrer: i.e., it tests the legal sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

14
15
16
17
18

In resolving such a motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir. 1996).

19
20
21
22

Motions to dismiss civil rights complaints should be "scrutinized with special care." *Johnson v. State of Calif.*, 207 F.3d 650, 653 (9th Cir. 2000)(the liberal construction rule is particularly important in civil rights cases); *Barker v. Riverside Cnty. Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).

23
24
25
26
27

Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). When a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Watson Carpet & Floor Covering,*

28

*Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011)(defendants' conduct may have "several plausible explanations" but "(f)erreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage.)

The Court should not "inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969).

When a video captures the events in question, no genuine dispute of fact exists for anything that is clearly discernable in it, even if sworn testimony in the record contradicts what the video shows. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)[1].

## IV.   Plaintiffs Have Plead Sufficient Factual Support for Their Unlawful Detention and Arrest Based Claims

Claims that police officers have unconstitutionally detained or arrested a person are analyzed under an objective reasonableness standard. *Graham v. O'Connor*, 490 U.S. 386 (1989).

### A.   There Was No Reasonable Suspicion To Detain Mr. DALTON

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer who "'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot'" may "briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021).

In determining whether an officer had reasonable suspicion, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his

---

[1]    In this case, although the Complaint expressly incorporated by reference a video, it was inadvertently omitted from the filing and therefore should not be considered in ruling on this motion.

experience"). Reasonable suspicion is less than probable cause; "[i]t is merely 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).

A court will defer to officers' inferences only when such inferences rationally explain how the objective circumstances "arouse[d] a reasonable suspicion that the particular person being stopped ha[d] committed or [was] about to commit a crime." *United States v. Montero-Camargo*, 208 F.3d 1122 (9th Cir. 1999) (en banc).

"[W]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion in making a stop." Accordingly, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population. Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity. *United States v. Manzo-Jurado*, 457 F.3d 928, 934–935 (9th Cir. 2006).

In this case, Mr. DALTON and Ms. PIZZO called for PERT support "as they have many times in the past." (Complaint pp 13) Following an unsuccessful search for Octavia, DOE 1 returned once more, and when Ms. PIZZO, a citizen complainant, advised that she had been a victim of assault and Mr. DALTON had protected her[2], DOE 1 "grabbed him by the arm and put him in handcuffs, thereby arresting him without probable cause." (Complaint pp 16.)

---

[2]    A citizen witness, who is not an informant, is generally presumed reliable. See *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976) ("A detailed eyewitness report of a crime is self-corroborating; it supplies its own indicia of reliability."); see also *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997) (noting that "citizen informants, identified bystanders, victims and crime scene witnesses may generally be presumed credible by police in a way that professional informants are not") (internal quotation marks omitted); 2 Wayne R. LaFave, Search and Seizure § 3.4(a) (4th ed. 2004) (noting that corroboration is generally not essential when an average citizen reports a crime based on personal observations, and that in such cases reliability may generally be presumed). see *Ewing v. City of Stockton*, 588 F.3d 1218, 1224–1225 (9th Cir. 2009).

DOE 1 cannot articulate **a** "particularized and objective basis" for suspecting Mr. DALTON of criminal activity. Rather, he acted in a pique of anger that Mr. DALTON advised him that he did not want to speak to him, as opposed to another officer with more familiarity with the situation[3].

### B.   Ms. PIZZO Was Unlawfully Detained

PP 17 of the Complaint alleges that Ms. PIZZO was detained because she deigned to answer the telephone, rather than speak to DOE 1. A person approached in a public place who is questioned by a police officer need not answer any questions and is legally free to ignore the officer or to walk away. *Florida v. Royer*, 460 U.S. 491 (1983); *United States v. Woods*, 720 F.2d 1022, 1026 (9th Cir. 1983). This is the situation Ms. PIZZO was placed in. The question thus becomes whether she was detained, because clearly these actions are constitutionally protected under the Fourth Amendment. (See section IV(C))

A "seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.*.

Once the officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," then a seizure has occurred and the requisite level of justification for the seizure must be shown. *Id.*. If the consensual encounter has ripened into an investigatory detention under Terry, then the officer must have "'reasonable suspicion." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).

---

[3]   The elements of Penal Code sec 148 and 273a (felony child abuse) will be discussed in further detail in section IV(C) below addressing the lack of probable cause. In other words, even if there was reasonable suspicion to detail, there was no probable cause to arrest. Since the Claim pleads both in the alternative, the claim need not be dismissed and the matter will proceed forward on the basis of the particular claim(s) the Court deems viable at this stage..

In the absence of physical force, in order to constitute a seizure, an officer's show of authority must be accompanied by "submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); see also *Brendlin v. California*, 551 U.S. 249, 254 (2007).

This "'reasonable person' test presupposes an innocent person." *United States v. Brown*, 996 F.3d at 1005.

Here, pp 17 of the Complaint specifically alleges that, given DOE 1's unjustified arrest of Mr. DALTON and his treatment of Olivia's parents as criminals, she "reasonably felt she was being detained due to the show of force (ie. handcuffs being retrieved." Given that all reasonable inferences are to be construed in Plaintiff's favor, this allegation is all that is required at this stage to allow the matter to proceed to discovery

This is not a case where "momentary hesitation and direct eye contact prior to flight constitutes submission to a show of authority." *United States v. Smith*, 633 F.3d 889, 892–893 (9th Cir. 2011). It was a detention, pure and simple.

### C.   There Was No Probable Cause To Believe Plaintiff DALTON Had Committed Any Crime.

There can be no dispute that Plaintiff DALTON was in fact arrested. See *Park v. Shiflett*, 250 F.3d 843, 851–852 (4th Cir. 2001)(custodial arrest occurred when detainee, despite being told he was not under arrest, was thrown against the wall by officers, kicked, handcuffed, and locked in a patrol car after he attempted to leave).[4]

A warrantless arrest is presumed unlawful and in violation of the Fourth Amendment. Once Plaintiff meets this burden, the burden of proof shifts to the defendant(s) to establish that arrest was based upon probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

---

[4]   Ms. PIZZO concedes she was not arrested, so this alternate theory of a Fourth Amendment violation may be dismissed as to her alone.

To determine whether officers have probable cause at the time of the arrest, the Court must consider:

> "whether at that moment the facts and circumstances within [the Officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." (Citation) Although conclusive evidence of guilt is not necessary to establish probable cause, "mere suspicion, common rumor, or even strong reason to suspect are not enough." (Citation.) . ..

*Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 953–954. (9th Cir. 2010)

Those facts which justify probable cause are those known at the time of the arrest. Facts uncovered afterward are irrelevant. *Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006).

Despite any argument that an officer is "free to disbelieve" a suspect, the law is clear that all the evidence must be considered in a probable cause analysis. *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).

The totality of the circumstances includes the 'collective knowledge of the officers involved, and the inferences reached by experienced, trained officers.' " *U.S. v. Sharpe*, 470 U.S. 675, 682 (1985). The Court should look to the collective knowledge of all the officers involved even though all of that information may not have been communicated to the officer(s) who actually conduct the seizure. *U.S. v. Ramirez*, 473 F.3d 1026, 1032–33 (9th Cir. 2007).[5]

### 1. § 148 Requires a Showing that the Deputies Were Acting Lawfully.

Penal Code § 148(a)(1) provides, "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, . . . shall be [guilty of a misdemeanor]."

---

[5]   Thus, DOE 1 is charged with the Sheriff's Department's knowledge of the prior multiple service calls. Discovery will reveal that dispatchers routinely advise responding officers about prior service calls to a particular address. This is done for officer safety.

§ 148 is a general intent crime, proscribing only the particular act without reference to an intent to do a further act or achieve a future consequence. *In re Muhammed C.*, 95 Cal.App.4th 1325 (2002).

An outright refusal to cooperate with police officers, without more, is not adequate grounds to arrest for a violation of § 148. *People v. Bower*, 24 Cal.3d 638, 649 (1979); *Mackinney v. Nielsen*, 69 F.3d 1002, 1006 (9th Cir. 1995). Nor does § 148 criminalize a failure to "respond with alacrity to police orders." *People v. Quiroga*, 16 Cal.App.4th 961 (1993).

Finally, simply asserting a constitutional right, without more, cannot form the basis of a lawful arrest for violating § 148(a)(1), either, even if it causes the officer's job to become prolonged. *U.S. v. Prescott*, 581 F.2d 1343, 1346 (9th Cir. 1978)(no crime to refuse entry to officers who had no search or arrest warrant but requested consent); *People v. Wetzel*, 11 Cal.3d 104, 109–110 (1974)(standing in one's doorway to speak to officers and refusing to consent to a request to enter the home cannot constitute any impropriety and certainly does not constitute a violation of § 148)

pp 16 of the Complaint alleges that DOE 1 acted in a pique of anger that Mr. DALTON advised him that he did not want to speak to him, but rather because he declined to speak to him, as opposed to another officer with more familiarity with the situation. Such conduct simply does not constitute a violation of § 148, so any arrest for this charge was without probable cause.

### 2.   There was no Probable Cause to Arrest for Child Endangerment

Cal. Penal Code § 273a(a) punishes anyone who, "having the care or custody of any child," and under circumstances likely to produce great bodily harm or death, "willfully causes or permits that child to be placed in a situation where his or her person or health is endangered."

Although the statute requires the defendant to act "willfully," the California Supreme Court has held that criminal negligence suffices, such that the defendant need

1   not be subjectively aware of the risk of harm involved. *People v. Valdez*, 27 Cal.4th
2   778, 118 Cal. Rptr. 2d 3 (2002); *Diaz-Rodriguez v. Garland*, 2021 U.S. App. LEXIS
3   27266, at *6 (9th Cir. 2021).

4   Under California law a parent/guardian has the right to use justifiable physical
5   force to discipline a child. Physical force is justifiable if a reasonable person would find
6   that punishment was necessary under the circumstances and that the physical force or
7   method used was reasonable. *People v. Checketts*, 71 Cal.App.4th 1190, 1194 (1999),

8   In this matter, the Complaint alleges in pp 15 that " Ms. PIZZO told DOE 1 that
9   Octavia had her in a corner pushing and hitting her when Mr. DALTON bear-hugged
10   her to get her off." Absent any other information, and given the extensive prior history
11   of PERT and Sheriff's responses to the home, DOE 1 had no probable cause to believe
12   that Mr. DALTON committed felony child abuse by simply "bear-hugging" Olivia.
13   There was a total lack of any evidence that "circumstances likely to produce great
14   bodily harm or death" existed.

15   No reasonable officer could believe that these facts supported a finding of
16   probable cause.[6]

17
18   **V.   The Facts Alleged in the Complaint Support Ms. PIZZO's Claim Under
        the "State Created Danger Doctrine."**
19

20   "As a general rule, members of the public have no constitutional right to sue
21   [public] employees who fail to protect them against harm inflicted by third parties."
22   *L.W. v. Grubbs (Grubbs I)*, 974 F.2d 119, 121 (9th Cir. 1992)(citing *DeShaney v.*
23   *Winnebago Cty., Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).

24   An exception to the rule applies when government employees "affirmatively
25   place the plaintiff in a position of danger, that is, where [their] action[s] create or
26   expose an individual to a danger which he or she would not have otherwise faced."
27   *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)

28

---

[6]   In counsel's experience, as is their habit and custom, the COUNTY typically treats these 12(b)(6) motions as if they were Summary Judgment motions and typically insert their Deputies versions of events as if they were the gospel truth.

The affirmative act must create an actual, particularized danger, and the ultimate injury to the plaintiff must be foreseeable, *Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003).

The employees must have also acted with "deliberate indifference" to a "known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).

"In examining whether an officer affirmatively places an individual in danger, the Court examines whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000). see also *Kennedy v. City of Ridgefield*, 439 F.3d at 1064 n.5 (recognizing relevant inquiry is whether state action "le[ft] [the plaintiff] in a situation more dangerous than the one she already faced" (emphasis added); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

Interpreting *DeShaney.*, 489 U.S. 189, the Ninth Circuit has held the "critical distinction" for finding liability is not "between danger creation and enhancement, but . . . between state action and inaction in placing an individual at risk." *Hernandez v. City of San Jose*, 897 F.3d at 1135.

In *Munger*, the officers affirmatively ejected the decedent from a bar late at night into sub-freezing temperature and prevented [him] from driving his truck or reentering [the bar]." That the cold would eventually kill him was certainly foreseeable as he was "wearing only a t-shirt and jeans [and] was intoxicated." *Id.* at 1087. The Court ultimately held it was "indisputable . . . that the officers placed Munger in a more dangerous position than the one in which they found him." *Id.*.

In *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), the Court denied qualified immunity to an officer because the plaintiff had presented genuine issues of material fact on whether he had violated her due process rights. Most of the factual disputes concerned the exact danger she faced and whether the defendant officer had knowledge

of that danger. . But the affirmative acts of the defendant were undisputed: he had (1) "arrested [the driver]," (2) "impounded [the driver's] car," and (3) "stranded [the plaintiff] in a high-crime area at 2:30 a.m."

These actions, according to the Court, "trigger[ed] a duty of the police to afford [the plaintiff] some measure of peace and safety." The Court further observed the danger to the plaintiff was foreseeable—"the inherent danger facing a woman left alone at night in an unsafe area [was] a matter of common sense." Id.

In *Kennedy v. City of Ridgefield*, 411 F.3d 1134 (9th Cir. 2005), the Court found the defendant-officer had "affirmatively created a danger" when he drove to the Burns residence and notified the Burns family of the plaintiff's allegations [of molestation] against the Burns's son, Michael." *Id.* at 1063. The officer was aware Michael was dangerous, and he had promised to warn the plaintiff before taking any action against Michael, but ultimately failed to do so. Michael later shot and killed the plaintiff's husband and severely wounded the plaintiff.

The Court found that a jury could find that Officer Shields "unreasonably created a false sense of security" by agreeing to give the Kennedys "advanced notice of advising the Burns family of the allegation that Michael Burns sexually molested Tera Teufel, and assuring the plaintiffs of a neighborhood patrol."

The Court stated:

> Shields's affirmative actions placed the Kennedy family in a situation of danger greater than they would have faced had he not acted at all. Shields does not dispute that the revelation to Michael Burns's mother of the allegations of sexual abuse against Michael Burns triggered his actions against Plaintiff and her husband. In revealing the existence of allegations against Michael to Angela Burns after having promised Kennedy that he would notify her first, Shields created a situation of heightened danger. It was inevitable that Michael Burns would eventually learn of the allegations made against him, and he would likely infer who had made them. If Kennedy had received the prior warning officer Shields promised her, she and her family could have taken additional precautions. Instead, they relied on Shields's promise of advance notification and so considered additional precautions unnecessary.

- 13 -

Moreover, Shields further augmented this danger by offering false assurances that the police would patrol the Kennedy's neighborhood the night of the shooting. Misrepresentation of the risk faced by a plaintiff can contribute to a finding of state-created danger. (Citation omitted) Plaintiff alleges that she and her husband based their decision to remain at home that night and leave in the morning in reliance on Shields's assurances that the neighborhood would be patrolled. Defendant's affirmative promise of a police patrol thus influenced Plaintiff's assessment of the risk she and her family faced.

Second, resolving all factual disputes in Plaintiff's favor, Shields acted with deliberate indifference. " . . . Here, Plaintiff has alleged that the consequences of Shields's actions were obvious: first, that once informed of the allegations against him, Michael Burns would attempt to harm the Kennedy family; and second, that having been assured by Shields's promise to provide police protection, the Kennedy family would rely upon that promise.

Resolving factual disputes in Kennedy's favor, the record supports her assertion that Shields should have recognized the obvious consequences of his actions. Most significantly, Plaintiff specifically asked Shields to give her advance notification because she feared for the safety of her family. In addition, Plaintiff herself had previously informed Shields of Michael Burns's violent tendencies, including an incident in which Michael Burns had broken into a girlfriend's home. Shields also knew of a separate investigation in which school authorities suspected (albeit erroneously) that Michael Burns sent death threats to another student. Finally, on the night of the attack, Plaintiff informed Shields directly that he had placed her family in danger by informing the Burns family of the allegations against Michael prior to notifying the Kennedy family. Under these circumstances, the obvious consequence of informing Angela Burns prior to the Kennedy family and of falsely assuring the Kennedy family of police protection was to increase the risk the Kennedy family faced from Michael Burns.

*Kennedy v. City of Ridgefield*, 411 F.3d 1134, 1143–1144 (9th Cir. 2005).

Under these circumstances, the Court found the defendant officer "affirmatively created an actual, particularized danger [the plaintiff] would not otherwise have faced" and that the danger was "foreseeable." *Id.* at 1063–1064, fn. 5.

In *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997), the plaintiff "became seriously ill," and his "neighbors and a passerby called 911 for emergency medical services." The defendant officers "arrived first," but rather than helping the plaintiff, they "cancelled the request for paramedics, broke the lock and door jamb on the front door of [his] residence, moved him inside the house, locked the door, and left"—all while knowing he was "in grave need of medical care."

Based on these allegations, the Court concluded: "[t]he officers . . . took affirmative actions that significantly increased the risk facing [the plaintiff]." *Id.* at 710.

### A. Ms. PIZZO Has Alleged Facts to Show That the Danger was Obvious

In this case, DOE 1 increased the danger to Ms. PIZZO by falsely arresting her husband and family protector despite a well documented history of Olivia's violent tendencies.

### B. Ms. PIZZO Has Alleged Facts to Show That DOE 1 Acted with Deliberate Indifference

"Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel v. Kent Sch. Dist.*, 648 F.3d at 974. It "requires a culpable mental state," and the standard the Court applies is even higher than gross negligence." *Id.*

To claim deliberate indifference, a plaintiff must allege facts demonstrating the Officer "recognize[d] [an] unreasonable risk and actually intend[ed] to expose [the plaintiff] to such risks without regard to the consequences to [the plaintiff]." *Id.*

In *Wood v. Ostrander*, 879 F.2d 583, the Court held a jury could find the defendant Officer exhibited deliberate indifference if, among other things, he had

"knowledge of the danger" to the plaintiff—if he knew that "the area where [the plaintiff] was stranded had the highest violent crime rate in the county outside the City of Tacoma." He would have also shown deliberate indifference if he failed to make "any inquiry at all as to [the plaintiff's] ability to get safely home" or "ignored her request for help."

In *Kennedy v. City of Ridgefield*, 439 F.3d 1055, the defendant officer "knew that Michael was violent." The plaintiff "told [the officer] in detail of Michael['s] violent tendencies, including [that he had] li[t] a cat on fire and assault[ed] his girlfriend with a baseball bat after breaking into her house." The plaintiff "left several messages with the police department . . . in which she expressed continued fear for her family's safety and refreshed her concern that she be given notice before the Burns family was notified in the course of the [criminal] investigation."

Under these circumstances, the Court found the officer "acted deliberately and indifferently to the danger he was creating" when he notified Michael of the allegations against him without first warning the plaintiff. *Id.* at 1065.

In *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, the officers ejected the decedent into sub-freezing temperatures even though "they knew [he] was wearing only a t-shirt and jeans [and] was intoxicated." "[T]he fact that the officers went looking for [the decedent] (or so claim), [further] demonstrate[d] . . . they were aware of the danger he was in." Such indifference, coupled with the officers' affirmative acts, increased the danger to the decedent, and the Court, therefore, denied the officers qualified immunity.

Deliberate indifference has been shown (or at least alleged) because DOE 1 "disregarded a known or obvious consequence of his actions," to wit, the continmuance of an assault that led to a police response in the first placeThe consequences of his actions were obvious: injury or death could have (and did) occurred to Plaintiff.

1
2

### C.   Ms. PIZZO Need Not Allege facts to show that she sustained serious injuries after Mr. DALTON's arrest

3       Physical injury is not an element of a § 1983 claim. *Robinson v. Solano Cnty.*,
4   278 F.3d 1007, 1013–14 (9th Cir. 2002)(pointing a gun and causing the suspect to "fear
5   for [his] life" even it does not cause physical injury); *Meredith v. Erath*, 342 F.3d 1057,
6   1063 (9th Cir. 2003)(lawful detention may be unreasonable if "unnecessarily painful,
7   degrading, or prolonged"); *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir.
8   2007)(excessive force where officers kept an eleven year old child handcuffed and
9   pointed their weapons at him "even after it was apparent that he was a child and was
10   not resisting them or attempting to flee"); *McDowell v. Rogers*, 863 F.2d 1302, 1307
11   (6th Cir. 1988)(we do not believe that a serious or permanent injury is a prerequisite to
12   a claim under § 1983).

13       The state-created danger exception "applies in situations where the plaintiff was
14   <u>directly</u> harmed by a third party." *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir.
15   2012)(appellee alleged that the appellants' failure to remove him from his foster home
16   caused him <u>emotional distress</u>, exposing him to <u>potential harm</u> from drugs. He never
17   alleged any direct harm to him, only to his sibling.)

18       In other words, contrary to Defendants' claim, there is no requirement of <u>serious</u>
19   injury. Ms. PIZZO has alleged the requisite direct injury (Complaint pp 17)

20
21   ### VI.   Plaintiffs Have Pled Sufficient Facts Supporting a Bane Act Cause of Action
22

23       A wrongful arrest or detention alone does not satisfy the requirements of "threat,
24   intimidation, or coercion" in the Tom Bane Civil Rights Act (Bane Act) (Cal. Civ. Code
25   § 52.1). *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 960 (2012). However,
26   an arrest or detention made with the specific intent to violate a plaintiff's constitutional

27
28

or statutory rights supports a Bane Act claim without having to allege any threat, intimidation, or coercion independent of the arrest or detention itself. *Cornell v. City & Cnty. of San Francisco*, 17 Cal.App. 5, th 766, 799 (2018).

A claim under Cal. Civ. Code § 52.1 will survive a motion to dismiss if he or she has alleged sufficient facts to indicate that the officer(s) acted with a specific intent to deprive him of her a constitutional right aside from the fact of the arrest itself. *Pashuta v. City of San Diego*, 2020 U.S.Dist.LEXIS 57218, at *4 (S.D. Cal. 2020) (citing *Reese v. City of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018)).

Therein, Defendants argued for the dismissal of a Bane Act claim because Plaintiff failed to show that any Defendant had specific intent to violate her constitutional rights when they arrested her. The Court disagreed, finding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.* at 1045; see also *Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019) ("Although Bane Act claims do require the specific intent to deprive a person of constitutional rights, such intent can be proven by evidence of recklessness"); *Wagon v. Rocklin Unified Sch. Dist.*, 2019 U.S.Dist.LEXIS 105387, at *18–20 (E.D.CA. 2019).

Mr. DALTON and Ms. PIZZO have a recognized liberty interest in their right to family association that cannot be interfered with via official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

Contrary to Defendant's argument, the Complaint alleges facts that allow the Court to draw the reasonable inference that DOE 1 acted in reckless disregard of Plaintiff's Fourth Amendment rights while also interfering with their right to family association and to care for their child. Accordingly, the Court should reject the Defendants' motion to dismiss the Bane Act claim.

**VII.   Plaintiffs Can Bring Claims Directly Against the County Under a Theory of Respondeat Superior Pursuant to Government Code §815.2**

The Government Claims Act draws a clear distinction between the liability of a public entity based on its own conduct (direct liability), and the liability arising from the conduct of a public employee (vicarious liability). *Zelig v. Cnty. of Los Angeles*, 27 Cal.4th 1112, 1127 (2002).

The respondeat superior principle of Gov't Code § 815.2(a) is not limited to negligent acts or omissions but includes intentional torts as well. See *Ramos v. Cnty. of Madera*, 4 Cal.3d 685 (1971) (coercion and willful harassment); *Ruppe v. City of Los Angeles*, 186 Cal. 400 (1921) (assault and battery); *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal.App.3d 133, 141 (1981) (employer can be vicariously liable for employee's intentional torts if employee's acts leading up to tort bear some relation to employee's duties); *Allison v. Cnty. of Ventura*, 68 Cal.App.3d 689 (1977) (false imprisonment); *Friedman v. City of Los Angeles*, 52 Cal.App.3d 317 (1975) (wrongful demolition of building).

**VIII.   It Is Premature To Dismiss Any Claims Against DOES 2-5**

At present, the involvement of other Deputies, and the extent of their involvement, is unknown. Because discovery may reveal such involvement, they could then be added back. Plaintiffs submit the matter for the court's decision.[7]

**IX.   Leave to Amend Ought to be Granted**

A Rule 12(b)(6) motion may be granted with leave to amend. Plaintiff requests such leave if the Court finds any pleading deficiency.

The mandate of FRCP 15(a) is that leave to amend be 'freely given when justice so requires.' Ordinarily, courts do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend. *Saes Getters S.p.A. v. Aeronex,*

---

[7]   This presupposes that the COUNTY even has the authority to make a 12(b)(6) claim on behalf of an unserved Defendant.

1    *Inc.*, 210 F.Supp.2d 1081, 1086 (SDCA 2002). Leave to amend may be denied if the

2    proposed amendment is futile or would be subject to dismissal. *Saul v. U.S.*, 928 F.2d

3    829, 843 (9th Cir. 1991). A proposed amendment is 'futile' only if no set of facts can be

4    proved under the amendment which would constitute a valid claim or defense. *Miller v.*

5    *Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Milanese v. Rust- Oleum Corp.*,

6    244 F.3d 104, 110 (2nd Cir. 2001)(leave properly denied where proposed claim 'could

7    not withstand an inevitable motion for summary judgment) Another factor occasionally

8    considered is whether the moving party has previously amended his or her pleading.

9    The district court's discretion to deny leave is especially broad 'when the court has

10    already given a plaintiff one or more opportunities to amend his complaint ... ' *Mir v.*

11    *Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980); *Sisseton-Wahpeton Sioux Tribe v. U.S.*, 90

12    F.3d 351, 355 (9th Cir. 1996).

        In this case, a proposed amendment would not be futile.

### Conclusion

        For the foregoing reasons, Plaintiffs request that the Motion to Dismiss be denied except as to Ms. PIZZO's arrest, but not detention, claim.

Respectfully submitted,

Dated: March 23, 2022      By:    s/ Keith H. Rutman

                                      KEITH H. RUTMAN

                                      Attorney for Plaintiffs